IN THE
TENTH COURT OF APPEALS


No. 10-18-00273-CR

DANIEL BENITO GUAJARDO,

                                                    Appellant

 v.

THE STATE OF TEXAS,

                                                    Appellee

From the 54th District Court
McLennan County, Texas
Trial Court No. 2017-1908-C2

## CONCURRING OPINION

At the outset, I recognize that the lead opinion correctly concluded that the evidence in this case does not support the enhancement allegation. The question then is what should be done about it. Simply because Guajardo complains that the evidence is "insufficient" should not, per se, obviate a harm analysis. With respect to the enhancement allegation, we are addressing a punishment issue that impacts the sentencing range, not guilt/innocence. In a similar vein, in her dissent in *Jordan*, Presiding

Judge Keller compared this situation to relief afforded when the evidence is insufficient to support a deadly-weapon finding. *See Jordan v. State*, 256 S.W.3d 286, 294 (Keller, P.J., dissenting). In that instance, we simply delete the deadly-weapon finding. *See id.* Or, in other words, "[a] conclusion on appeal that the evidence is legally insufficient to support a particular verdict or finding serves to remove that verdict or finding from the case. Period." *Id.* Therefore, because the evidence in the record failed to support the enhancement allegation, the enhancement should have never been submitted to the jury. Accordingly, the lower end of the punishment range would have been fifteen years, rather than twenty-five years. Like Presiding Judge Keller, I would conclude that Guajardo's request for relief is really jury-charge error that flows from the evidentiary insufficiency. *See id.* at 294.

However, regardless of whether one agrees with the preceding conclusion, the next step involves whether or not a harm analysis should be conducted. I recognize that, under similar circumstances, a majority on the Court of Criminal Appeals concluded that the "court of appeals was correct in refusing to conduct a harm analysis in this case" and reversed the trial court's judgment and remanded for a new punishment hearing. *See id.* at 292-93. The facts in this case are identical to those in *Jordan* and, thus, provide a second opportunity to review *Jordan* in light of the law on structural error and more recent decisions from the Court of Criminal Appeals. For the reasons articulated below, I

believe that a complete harm analysis should have been done in *Jordan* and should be done in this case.

A structural error is a "'defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.'" *Johnson v. United States*, 520 U.S. 461, 468, 117 S. Ct. 1544, 137 L. Ed. 2d 718 (1997) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S. Ct. 1246, 113 L. Ed. 302 (1991)); *see Mendez v. State*, 138 S.W.3d 334, 339 (Tex. Crim. App. 2004). Structural errors "give rise to automatic reversal, with no harm analysis whatsoever." *Johnson v. State*, 169 S.W.3d 223, 232 (Tex. Crim. App. 2005). An appellate court may "not review and analyze a claim of error as structural error unless the United States Supreme Court has defined the error as structural . . . ." *Burks v. State*, 227 S.W.3d 138, 144 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (citing *Gray v. State*, 159 S.W.3d 95, 97 (Tex. Crim. App. 2005)). In the following types of cases, the United States Supreme Court has found structural errors: (1) a total deprivation of the right to counsel; (2) lack of an impartial trial judge; (3) unlawful exclusion of grand jurors of a defendant's race; (4) violation of the right to self-representation; (5) violation of the right to a public trial; (6) *Ake* error; and (7) an erroneous reasonable-doubt instruction to the jury. *See Mendez*, 138 S.W.3d at 340 (citing *Johnson*, 520 U.S. at 468-69); *see also Rey v. State*, 897 S.W.2d 333, 345 (Tex. Crim. App. 1995).

"All structural errors must be founded on a violation of a federal constitutional right, but not all violations of federal constitutional rights amount to structural errors."

*Schmutz v. State*, 440 S.W.3d 25, 29 (Tex. Crim. App. 2014). Indeed, "[m]ost constitutional errors are not 'structural.'" *Mendez*, 138 S.W.3d at 340. "For federal constitutional error that is not structural, the applicable harm analysis requires the appellate court to reverse unless it determines beyond a reasonable doubt that the error did not contribute to the defendant's conviction or punishment." *Lake v. State*, 532 S.W.3d 408, 411 (Tex. Crim. App. 2017) (plurality op.) (citing TEX. R. APP. P. 44.2(a)).

The situation in the case at bar is not listed among those deemed structural by the United States Supreme Court. Therefore, the error in this case is not structural and should be subjected to a harmless-error analysis.[1] *See Lake*, 532 S.W.3d at 411.

Nevertheless, the *Jordan* majority relied on prior decisions in *Russell v. State*, 790 S.W.2d 655 (Tex. Crim. App. 1990) and *Jones v. State*, 711 S.W.2d 634 (Tex. Crim. App. 1986) to support its conclusion that a harm analysis should not be conducted when the State failed to meet its burden of showing finality of the enhancement conviction. *See* 256 S.W.3d at 291. Both of these cases predate the Court's major pronouncement in *Cain v. State* regarding the application of harmless-error analysis to all errors not deemed

---

[1] It is also noteworthy that the United States Supreme Court has held that the failure to submit an element of the offense to the jury was not structural error and was thus subject to a constitutional harmless-error review. *Neder v. United States*, 527 U.S. 1, 8, 119 S. Ct. 1827, 144 L. Ed. 35 (1999). Neder was charged with mail fraud, wire fraud, and bank fraud. *Id.* at 6. At trial, the court failed to include materiality as an element of the offense in its jury instructions, although it is an element of all three crimes. *Id.* at 4-6. The Supreme Court held that this was error, but subject to a *Chapman* harmless-error analysis. *Id.* at 4 (citing *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1966)). Surely, if the omission of a necessary element in the charge during the guilt-innocence phase is subject to harmless-error analysis, the trial court's error in submitting the enhancement allegation in this case without sufficient evidence of the proper sequencing should also warrant harmless-error analysis.

structural by the United States Supreme Court. 947 S.W.2d 262, 264 (Tex. Crim. App. 1997) ("Except for certain federal constitutional errors labeled by the United States Supreme Court as 'structural,' no error, whether it relates to jurisdiction, voluntariness of a plea, or any other mandatory requirement, is categorically immune to a harmless error analysis. Of course, where the error involved defies analysis by harmless error standards or the data is insufficient to conduct a meaningful analysis, then the error will not be proven harmless beyond a reasonable doubt . . . . Hence, it may be true that some kinds of errors (particularly jurisdictional ones) will never be harmless . . . and that some other kinds of errors will rarely be harmless. But, appellate courts should not automatically foreclose application of the harmless error test to certain categories of errors.").

Additionally, the *Jordan* majority later emphasized that the "absence of discrete, objective facts decided by a jury in assessing punishment" prevents a reviewing court from quantifying what impact the unsupported finding had on a jury's normative sentencing function. 256 S.W.3d at 293. Thus, "[u]nder these circumstances, the State's failure to meet its burden of proof, even if subjected to a harm analysis, can never be deemed harmless." *Id.*

Arguably, the *Jordan* majority conducted a harm analysis—albeit an abbreviated one. *See id.* Furthermore, just because a particular error might result in a conclusion of harm in most, if not all, instances should not eliminate the need for a harm analysis

altogether.  Such analysis is important for consistency in the law, especially considering the analysis in the *Jordan* majority appears to be inconsistent with the law on structural error, as well as other decisions from the Court of Criminal Appeals.  *See Lake*, 532 S.W.3d at 411 ("Even when an error that is not structural under *Cain* seems to defy proper analysis or the data seems to be insufficient to assess harm, an appellate court is obligated to conduct a thorough analysis to determine the extent of harm caused by this error before reversing the conviction. . . .  If, after such analysis, the harm of the error cannot be assessed, the error will not be proven harmless beyond a reasonable doubt, but appellate courts should not automatically foreclose application of the harmless error test." (internal quotations & footnotes omitted)).

> In her dissent, Presiding Judge Keller emphasized that:
>
> Even if the jury had been correctly instructed, it would have heard exactly the same evidence.  The prior convictions would still have been presented as "convictions" rather than simple bad acts.  The only differences are that the jury would have been permitted to assess a lower minimum punishment, and the range of punishment would have been expanded by ten years.  But the jury gave appellant 99 years—the highest term of years possible.  I could readily conclude that the ten-year difference in the lower end of the punishment range might have mattered if the jury had assessed 25 years or 50 years, or even 75 years.  But not 99 years.

*Jordan*, 256 S.W.3d at 295 (Keller, P.J., dissenting).

Similarly, in the instant case, Guajardo was sentenced to 99 years—the highest term of years possible.  Furthermore, the prior conviction would still have been presented to and considered by the jury.  And like Presiding Judge Keller, I would have conducted

a harm analysis on this non-structural error and ultimately concluded that the error was harmless, especially given that Guajardo was sentenced at the very top of the punishment range.

However, I am resigned to the fact that *Jordan* is still binding precedent regarding this issue, and as an intermediate appellate court, we are required to follow it. *See State v. Delay*, 208 S.W.3d 603, 607 (Tex. App.—Austin 2006) ("As an intermediate appellate court, we lack the authority to overrule an opinion of the court of criminal appeals."), *aff'd sub nom. State v. Colyandro*, 233 S.W.3d 870 (Tex. Crim. App. 2006); *State v. Stevenson*, 993 S.W.2d 857, 867 (Tex. App.—Fort Worth 1999, no pet.) ("Because a decision of the court of criminal appeals is binding precedent, we are compelled to comply with its dictates."). Further, following *Jordan*, I believe that the lead opinion appropriately reversed the trial court's judgment and remanded for a new trial on punishment. But, because I believe that the Court of Criminal Appeals should revisit *Jordan* and, at the very least, require a complete harm analysis for his non-structural error, I respectfully concur in the Court's judgment.

JOHN E. NEILL
Justice

Concurring opinion delivered and filed August 5, 2020

