

# Fourth Court of Appeals
## San Antonio, Texas

## CONCURRING OPINION

No. 04-21-00295-CR

Brian Dale **NIXON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 454th Judicial District Court, Medina County, Texas
Trial Court No. 16-04-11937-CR
Honorable Sid L. Harle, Judge Presiding

Opinion by:     Irene Rios, Justice
Concurring Opinion by: Rebeca C. Martinez, Chief Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Irene Rios, Justice
                Adrian A. Spears II, Justice

Delivered and Filed: September 17, 2025

I join the majority's opinion as to issue four, but I respectfully concur in the result only as to issue three because I do not think *Nixon I* controls our determination of whether there was a violation of Section 24.012(e). Nor am I convinced there was no violation. I concur because, regardless, the record does not show harm.

In *Nixon I*, the Court of Criminal Appeals held that the record does not show that the location of Nixon's trial was "*inherently* prejudicial to his presumption of innocence." *Nixon v.*

*State* (*Nixon I*), 707 S.W.3d 279, 291 (Tex. Crim. App. 2024). In reaching this determination, the court explained that inherent prejudice requires that "jurors *must necessarily* interpret [a challenged procedure] as a sign that a defendant is particularly dangerous or culpable." *Id.* The court explained that the record allowed for several neutral interpretations regarding the location of Nixon's trial or none at all. *Id.* In its analysis, the court remarked:

> There is no disagreement in this case that the government building at issue here housed more than one government facility. One of those facilities was a jail, another was the Sheriff's Department, and a third was the auxiliary courtroom. All of these distinct facilities were located within the same building and under the same roof. And, as the photographs present in the record and reproduced as an appendix to the court of appeals' opinion also indicate, the building that contained these three distinct facilities was labeled on the outside with the words: "Medina County Jail[.]"

*Id.* at 287. The Court of Criminal Appeals limited its analysis by stating that the applicability of Section 24.012(e) was not before it. *Id.* at 284 n.8.

Here, of course, Nixon's issue three presents a disagreement, and the Court of Criminal Appeal's disclaimer signals that its analysis does not control whether Nixon's trial was held in a "correctional facility," as that term is used in Section 24.012(e) and defined in Section 1.07(14). *See* Tex. Penal Code Ann. §§ 1.07(14), 24.012(e). Moreover, the concept that separate facilities could exist within a larger facility is commonplace. For instance, "bathroom facilities" — a term used by the trial court at the hearing on Nixon's challenge — certainly would not be considered a separate "government facility" when located within the Medina County Jail building. The definition of "facility" contemplates this nesting because the term can indicate both a building and items within. *See Facility*, Webster's Third New International Dictionary 812–13 (1981) (defining term as, among other things, "something (as a hospital, machinery, plumbing) that is built, constructed, installed, or established to perform some particular function or to serve or facilitate some particular end").

To determine whether the auxiliary courtroom is nested within a "correctional facility," we must look to the penal code definition of the term. Section 1.07(14) defines "correctional facility" as "a place designated by law for confinement," which can include "a municipal or county jail." TEX. PEN. CODE ANN. § 1.07(14). Arguably, Medina County designated the entire building at issue as one for confinement by placing a sign over the entrance stating "Medina County Jail." The parties have not directed us to any authority which could bear on whether this signage or any other indicator satisfies the phrase "designated by law for confinement." *Id.* Some authority I have located suggests that the term "correctional facility" could include a courtroom or even a parking lot, depending on the particular circumstances. *See Lilly v. State*, 365 S.W.3d 321, 324, 326–27, 332 (Tex. Crim. App. 2012) (avoiding facial challenge to Section 24.012(e) by determining that the defendant was denied his right to a public trial where the district court held trial "at the chapel-courtroom [of a prison] on its own motion pursuant to Section 24.012(e)"); *Thompson v. State*, No. 06-13-00022-CR, 2014 WL 792122, at *1, *4 (Tex. App.—Texarkana Feb. 27, 2014, no pet.) (mem. op., not designated for publication) (holding evidence was sufficient to support a conviction for the offense of having a prohibited item in a correctional facility, *see* TEX. PENAL CODE ANN. § 38.11, where drugs were found in an "automobile in the parking lot of the . . . prison facility").

Ultimately, I would not resolve the question of whether Nixon's trial was held in a "correctional facility" because the record does not show the harm required for reversal, even if we assume a violation of Section 24.012(e). With statutory error, we must disregard the error if it "does not affect substantial rights." TEX. R. APP. P. 44.2(b); *See also Lake v. State*, 532 S.W.3d 408, 411 (Tex. Crim. App. 2017) (stating "only federal constitutional errors can be 'structural,'" and "[e]ven when an error that is not structural . . . seems to defy proper analysis or the data seems

to be insufficient to assess harm, an appellate court is obligated to conduct a thorough analysis to determine the extent of harm caused by this error before reversing the conviction." (citation omitted)). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Nixon has not argued harm within this framework. Instead, he circles back to the inherent prejudice arguments the Court of Criminal Appeals rejected, contending in his brief, "that jurors in this case, if held in the jail courtroom, would have a difficult time presuming [Nixon] innocent and would believe [Nixon] was dangerous." For the reasons given by the Court of Criminal Appeals, the jury could have made several neutral inferences based on the location of Nixon's trial or none at all. *See Nixon I*, 707 S.W.3d at 291. Applying this logic, and after having independently evaluated the whole record, *see King v. State*, 666 S.W.3d 581, 588 (Tex. Crim. App. 2023), I would hold the record does not show harm, even if error is presumed.

Rebeca C. Martinez, Chief Justice

DO NOT PUBLISH

- 4 -