

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

NOS. PD-0234-17 & PD-0235-17

**SCOTT NILES, Appellant**

**v.**

**THE STATE OF TEXAS**

ON PETITION FOR DISCRETIONARY REVIEW
FROM THE FOURTEENTH COURT OF APPEALS
HARRIS COUNTY

YEARY, J., filed a dissenting opinion.

## DISSENTING OPINION

Under Section 22.07(a)(2) of the Texas Penal Code, "[a] person commits an offense if he threatens to commit any offense involving violence to any person or property with intent to . . . place any person in fear of imminent serious bodily injury[.]" TEX. PENAL CODE § 22.07(a)(2). This offense is a Class B misdemeanor. TEX. PENAL CODE § 22.07(c). However, the offense becomes a Class A misdemeanor if it "is committed against a public servant." TEX. PENAL CODE § 22.07(c)(2). Although the charging instruments in these two cases alleged that the persons whom Appellant threatened were public servants, the jury charges

made no mention whatsoever of that particular element, much less did they authorize the jury to make a finding in that respect. Indeed, the jury charges perfectly presented the jury with the Class B misdemeanor offenses. The jury's verdict in each of these cases reflected: "We, the Jury, find the defendant 'Guilty.'" The jury did *not* specifically find Appellant to be guilty of the offenses as alleged in the charging instruments. By all appearances, Appellant was thus found guilty of the Class B—*not* the Class A—misdemeanor offenses.

Under these circumstances, it is not at all surprising that Appellant should argue on direct appeal that, because he was only convicted of the Class B misdemeanor, the one-year sentence imposed in the trial court's written judgment was illegal. After all, a trial court is required to enter judgment "immediately" upon receiving a verdict of conviction, TEX. CODE CRIM. PROC. art. 37.12, and the jury's verdicts found Appellant guilty only of—indeed, *could* have found him guilty *only* of—the Class B misdemeanor offenses. The Harris County District Attorney's Office conceded this error in its reply brief on direct appeal,[1] and the court of appeals reformed the judgment accordingly, and remanded the cause to the trial court for re-assessment of punishment within the Class B misdemeanor range.[2]

In a motion for rehearing in the court of appeals, the State Prosecuting Attorney [SPA] intervened for the first time to argue that the court of appeals mis-characterized the error on

---

[1] State's Brief on Direct Appeal at 27.

[2] *Niles v. State*, Nos. 14-15-00498-CR & 14-15-00499-CR, 2016 WL 7108248, at *10-11 (Tex. App.—Houston [14th Dist.] Dec. 6, 2016) (mem. op., not designated for publication).

original submission. According to the SPA, the true nature of the error in the case was not an illegal sentence; it was a defect in the jury charge. The charge was defective in that it omitted an essential element of the Class A misdemeanor, the "public servant" element. Moreover, the SPA asserted, the error in the case—as so reformulated—was subject to an analysis for harm, under settled federal constitutional precedents of the United States Supreme Court, and of this Court;[3] and it was harmless, to boot. When the court of appeals denied the motion for rehearing *sans* comment, the SPA renewed the claim in a petition for discretionary review in this Court. We refashioned the SPA's ground for review somewhat, but essentially granted discretionary review to examine the SPA's contention.

Now the Court accepts the SPA's argument that the issue in this case is one of jury charge error, and it remands the cause to the court of appeals "for proceedings consistent with" its opinion—presumably to conduct a harm analysis of the federal constitutional error in the jury charge. I dissent to this reformulation of Appellant's appellate complaint on several grounds. First, I believe the federal cases upon which the SPA depends are materially distinguishable from this case. Second, the State did not preserve any objection to the jury charge—and it should be the State's obligation to object on the facts presented here, not Appellant's. And finally, even if it is appropriate to convert Appellant's point of error on appeal into a jury charge issue rather than an illegal sentence issue, Appellant should be

---

[3] *Neder v. United States*, 527 U.S. 1 (1999); *Washington v. Recuenco*, 548 U.S. 212 (2006); *Olivas v. State*, 202 S.W.3d 137 (Tex. Crim. App. 2006).

given the latitude on remand to argue that the error was structural as a matter of state, if not federal, constitutional law. I will develop each of these arguments in turn.

## I.

In *Neder v. United States*, 527 U.S. 1 (1999), the appellant was convicted of several federal fraud offenses even though the jury charge did not require the jury to determine materiality, a necessary element of those offenses. Instead, the trial judge in *Neder* had taken it upon *himself* to supply the necessary findings on that element, and so the issue devolved into a question of whether an improper entity made that elemental finding necessary to conviction, in violation of the appellant's Sixth Amendment right to a jury trial. *Id*. at 6. The United States Supreme Court acknowledged that the appellant's constitutional right had been violated, but it held that such a violation did not amount to "structural" error, and was therefore subject to the federal harmless error rule. *Id*. at 8. On the facts of *Neder* itself, the Supreme Court found the error harmless. *Id*. at 17.

*Washington v. Recuenco*, 548 U.S. 212 (2006), involved a similar situation in which a trial judge commandeered a fact-finding function that the Sixth Amendment properly assigns to the jury—namely, whether the appellant used a "firearm" in the commission of his offense, which, if true, would mandate a three-year enhancement of the sentence. Relying upon *Neder*, the Supreme Court declared this *Apprendi* violation to be subject to the federal

harmless error rule as well.[4] *Id*. at 220. But again, in *Recuenco*, at least the trial judge had made the "firearm" finding, even if the jury did not. *Id*. at 215.

Here, there has simply been no finding—by *any* fact-finding entity—of the element that would justify raising the level of Appellant's terroristic threat offense to a Class A misdemeanor.[5] This is not a question of whether the correct entity made the requisite finding. It is a question of whether Appellant may be sentenced beyond the range of punishment justified by the *only fact-findings that have been made*—by *any* entity, properly or not.[6] In short, Appellant appropriately presented his point of error on appeal in the form of an illegal sentence claim. Such a claim may be raised for the first time on appeal.[7] We have no occasion to reformulate Appellant's point of error for him.

---

[4] *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (holding that, "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury").

[5] The Court notes that, in response to Appellant's motion for new trial, "the trial judge said of the 'public servant' element, 'The Houston Department firefighter, they got that.'" Majority Opinion at 8-9. Even assuming this vague comment could count as a finding of fact in support of the written judgment reflecting a conviction for the Class A misdemeanor, it would have come too late.

[6] Perhaps it could be argued that, by entering the written judgment reflecting a conviction for the Class A misdemeanor, the trial court made an *implied* finding with respect to the "public servant" element of that greater offense. But it makes no sense to me to recognize such an implied finding when both *Neder* and *Recuenco* stand for the proposition that such a finding would be constitutionally prohibited (even if not "structural" error) unless the accused had waived his constitutional right to jury trial. The Appellant did not waive his right to jury trial here. It would be inappropriate to imply a finding of fact that the trial court was not authorized to make.

[7] *See Mizell v. State*, 119 S.W.3d 804, 806 (Tex. Crim. App. 2003) ("A trial or appellate court which otherwise has jurisdiction over a criminal conviction may always notice and correct an illegal sentence.").

## II.

Even assuming, for the sake of argument, that it is somehow acceptable to transform Appellant's claim into something it was not, it is unclear to me that the State is in any position to urge that transformation now. The State made no objection to the lack of the elevating element in the jury charge. The Appellant cannot reasonably have been expected to level such an objection—for all he knew, the State's failure to object manifested a deliberate abandonment of the greater offense.[8] As the Court observes, during his closing argument, the prosecutor did not even mention the necessity of finding the "public servant" element. Majority Opinion at 9. That the State later conceded that Appellant was punished beyond the statutorily authorized range is consistent with the inference of abandonment.

To illustrate the anomaly of allowing the State at this late date to unilaterally alter the character of *Appellant's* point of error on appeal, consider the following thought experiment: Suppose that, following the jury's verdict in this case, the trial court took note of the fact that the charge it gave to the jury failed to authorize a finding on the "public servant" element, but that the verdict otherwise wholly supported a conviction for the Class B misdemeanor offense. Suppose that, in accordance with Article 37.12, the trial court therefore entered a

---

[8] *See* TEX. CODE CRIM. PROC. art. 37.08 ("In a prosecution for an offense with lesser included offenses, the jury may find the defendant not guilty of the greater offense, but guilty of any lesser included offense."). "In fact, the State can abandon an element of the charged offense without prior notice and proceed to prosecute a lesser-included offense." *Grey v. State*, 298 S.W.3d 644, 650 (Tex. Crim. App. 2009). What would Appellant's objection have been at this point? "Your Honor, I object to the prosecutor apparently exercising his unfettered discretion to abandon the greater offense!"

judgment of guilt for that lesser offense. Suppose further that, unhappy with some perceived trial error in the case, Appellant appealed the conviction, and that the State, pursuant to Article 44.01(c) of the Code of Criminal Procedure, then filed a cross-appeal.[9] Suppose that, in that cross-appeal, the State argued that the trial court erred to enter judgment for the lesser, Class B misdemeanor offense. An appellate court would be justified, under this scenario, to reject the State's argument on the ground of procedural default—that the State failed to object to the jury charge.[10] In that case, the State's attempt to convert the appellant's conviction for the lesser offense into something greater would surely fail.

It seems anomalous to me, then, that we should allow the State to convert Appellant's true point of error on appeal into a claim of jury charge error *that the State did nothing within its power at trial to prevent*. It is the classic straw man—the State takes an argument it should lose and (belatedly) transforms it into an argument it thinks it can win. I would not tolerate such a transformation, at least in the absence of a trial objection from the State that the jury charge was inadequate to justify a conviction for the greater offense it sought. And I would therefore affirm the judgment of the court of appeals.

---

[9] *See* TEX. CODE CRIM. PROC. art. 44.01(c) ("The state is entitled to appeal a ruling on a question of law if the defendant is convicted in the case and appeals the judgment.").

[10] I presume that the *Almanza* standard, allowing for the review of unobjected-to jury charge errors, would not operate to benefit the State in this scenario. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (on State's mot. for reh'g) (when the defendant objects to jury charge error, he must only demonstrate "some" harm to obtain a reversal; when he does not object, he must demonstrate "egregious" harm). *Almanza* construed Article 36.19 of the Code of Criminal Procedure, which speaks to claims of jury charge error when raised by the defendant, not by the State.

## III.

But now that the Court has (belatedly) accepted the SPA's invitation to reformulate the issue, the Appellant should at least be permitted to argue, on remand, that the jury charge did not simply violate the federal constitution—it violated the Texas Constitution as well.[11] Indeed, he should even be allowed to claim, in supplemental briefing, that this charge error should not be regarded as subject to a harmless error analysis *at all*, under principles of our own constitution. Unlike the Sixth Amendment, Article I, Section 15, of the Texas Constitution proclaims that "[t]he right of trial by jury shall remain inviolate."[12] There is ample room for argument that the failure of the jury to render a verdict that passed on every element necessary to constitute the offense that is reflected in the judgment is "structural" error for state constitutional purposes, and not subject to a harm analysis at all.[13] Moreover,

---

[11] It is true that Appellant has made no such argument up to this point. But that is because he has consistently taken the position that the court of appeals was correct to take his point of error at face value—as a challenge to the legality of the sentence. We cannot fairly expect him to abandon that claim and contest the SPA's suggested resolution of the issue *as reformulated* unless and until he has to—*i.e.*, after this Court's opinion today remanding the case to the court of appeals.

[12] *Compare* U.S. CONST. amend. VI ("[T]he accused shall enjoy the right to . . . trial, by an impartial jury[.]"), *with* TEX. CONST. art. 1, § 15 ("The right of trial by jury shall remain inviolate."). We have said before that there is no difference in scope between the Sixth Amendment's right to a jury trial and that of Article I, Section 10, of the Texas Constitution. *Jones v. State*, 982 S.W.2d 386, 391 (Tex. Crim. App. 1998). The *Jones* opinion, however, took no account of Article I, Section 15.

[13] *See Lake v. State*, 532 S.W.3d 408, 419 (Tex. Crim. App. 2017) (Yeary, J., concurring) ("I am not inclined to straightjacket our construction of [the harmless error rule] as the plurality continues to do today, in derogation of this Court's authority to, for example, declare certain *state* constitutional violations to be immune to harm analysis[.]"); *Neder*, 527 U.S. at 34, 38 (Scalia, J., dissenting) ("The underlying theme of the Court's opinion is that taking the element of materiality from the jury did not render Neder's trial unfair, because the judge certainly reached the 'right' result. But the same could

the right to a jury trial is a "waiver-only" right,[14] and Appellant did nothing to waive his right to have the jury pass on every element necessary to constitute the offense reflected in the judgment. The court of appeals may well conclude that Appellant's state constitutional right to a jury trial was denied him; that this error was not subject to a harm analysis; and that he is entitled to an entirely new trial, not just a new punishment proceeding.

But this assumes that the Court is correct to reformulate the issue at all. Because I would simply affirm the court of appeals' judgment, I respectfully dissent.

FILED:          June 13, 2018
PUBLISH

---

be said of a directed verdict against the defendant—which would be *per se* reversible error *no matter how overwhelming the unfavorable evidence*. The very premise of structural-error review is that even convictions reflecting the 'right' result are reversed for the sake of protecting a basic right. * * * Harmless-error review applies only when the jury *actually renders* a verdict—that is, when it has found the defendant guilty of all the elements of a crime.") (internal citation omitted).

[14] *See* TEX. CODE CRIM. PROC. arts. 1.12-1.14 (providing that the right to a jury trial in criminal cases "shall remain inviolate[,]" while providing express mechanisms which must be followed before it may be concluded that the right has been waived); *Marin v. State*, 851 S.W.2d 275, 280 (Tex. Crim. App. 1993) (failure of the trial court to implement waivable rights "is an error which might be urged on appeal whether or not it was first urged in the trial court").