

# In the Court of Criminal Appeals of Texas

---

No. PD-0290-23

---

TAREQ ALKAYYALI, *Appellant*

v.

THE STATE OF TEXAS

---

On State's Petition for Discretionary Review
From the Second Court of Appeals
Tarrant County

---

YEARY, J., filed a concurring opinion in which SCHENCK, P.J., joined.

In separate paragraphs of a single count, the indictment in this case charged Appellant with the commission of murder under two theories. The first paragraph alleged that he intentionally or knowing caused death, consistent with Section 19.02(b)(1) of the Texas Penal

Code. TEX. PENAL CODE § 19.02(b)(1).[1] The second paragraph alleged that he murdered his victim when, while he was intending to cause her serious bodily injury, he committed an act clearly dangerous to human life. TEX. PENAL CODE § 19.02(b)(2). Unfortunately, the second paragraph neglected to also allege that the act clearly dangerous to human life in fact *caused* the victim's death, as required by Section 19.02(b)(2) in order to constitute the offense of murder.[2]

In the trial court's charge to the jury, the abstract description of murder under Section 19.02(b)(2) was properly laid out in the definitions portion of the jury charge, including the caused-death element. But, as in the second paragraph of the indictment, that element was omitted from the application paragraph of the jury charge. Thus, the jury was authorized by the application paragraph of the charge to convict Appellant of murder—at least under the Section 19.02(b)(2) theory of murder—without ever making the elemental determination that he did in fact cause his victim's death. Appellant did not object to either the indictment or the jury charge based on this serious omission.

On appeal, Appellant argued that the jury charge was erroneous in this respect. Because he had failed to object at trial, however, he conceded that, consistent with Article 36.19 of the Texas Code of Criminal Procedure and this Court's opinion in *Almanza*, before he could

---

[1] Under Section 19.02(b)(1), "[a] person commits an offense if he . . . intentionally or knowingly *causes the death* of an individual[.]" TEX. PENAL CODE § 19.02(b)(1) (emphasis added).

[2] Under Section 19.02(b)(2), "[a] person commits an offense if he . . . intends to cause serious bodily injury and commits an act clearly dangerous to human life that *causes the death* of an individual[.]" TEX. PENAL CODE § 19.02(b)(2) (emphasis added).

obtain relief on appeal, he would have to demonstrate that the record reflected "egregious harm." TEX. CODE CRIM. PROC. art. 36.19; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g.).[3] He argued that the record did, in fact, reflect that he suffered egregious harm because causation was contested at trial and the omission of that element from the application paragraph permitted the jury to convict him without ever resolving that contested elemental issue. The court of appeals agreed, concluding that Appellant was egregiously harmed because the State was relieved of its burden to establish a necessary element of the offense, which undermined Appellant's "right to present a complete defense that sought to question . . . causation." *Alkayyali v. State*, 668 S.W.3d 445, 455 (Tex. App.—Ft. Worth 2023). Today the plurality opinion affirms that judgment, and I concur.

### I. ACTUAL, NOT JUST THEORETICAL, HARM?

The Court has said that "egregious harm must be based on actual harm rather than a finding of theoretical harm." *See* Plurality Opinion at 17 (citing *Alcoser v. State*, 663 S.W.3d 160, 165 (Tex. Crim. App. 2022)). On petition for discretionary review, the State Prosecuting Attorney [SPA] argues that there is no egregious harm because, among other things, "Appellant's chief defensive theory focused on a lack of criminal mental state rather than causation." *Id*. at 15. The SPA's thesis seems to be that the thrust of Appellant's defense was to challenge, not

---

[3] "[T]he actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171 (op. on reh.).

*causation*, but that it was ever his *intention* to cause the victim's death, as required for a conviction under Section 19.02(b)(1)—*intentionally or knowingly* causing death. The SPA contends that Appellant was not seriously challenging that he *did*, in fact, *cause* the victim's death (or that he was at least a but/for cause). In addition, the SPA argues that "the evidence does not show a viable causation argument[.]" *Id.*

But even if that is an accurate assessment of the record, it remains the case that jury deliberations could have been adversely impacted by the error in the jury charge. Because a jury verdict is "general," by statute, TEX. CODE CRIM. PROC. art. 37.07 § 1(a), we can only speculate under which theory the jury might have found Appellant guilty of murder. It is certainly possible that the jury was conflicted on the issue of Appellant's *intent* to cause death, given the defensive posture on that issue. If so, then the jury might have sought a way to convict Appellant that would avoid having to resolve that *mens rea* conflict. Under those circumstances, the jury might have seized upon the alternative theory of murder under Section 19.02(b)(2), which only requires an intent to cause serious bodily injury, not necessarily an intent to cause death. If the jurors (or even just *some* of the jurors) did convict Appellant under *that* theory of the offense, they might well have been misled by the faulty application paragraph into convicting Appellant without ever passing on the question of whether he caused the victim's death. If so, then Appellant has indeed suffered a very real violation of his due process right to have his chosen factfinder, here the jury, pass on every element necessary to justify a conviction.

Both Section 19.02(b)(1) and Section 19.02(b)(2) require a finding that the defendant *caused* the victim's death. The application paragraph did not require the jury to agree on which of the two statutory theories it found Appellant guilty under. Those jurors who believed Appellant to be guilty under Section 19.02(b)(1) would have found the elemental fact of causation. Meanwhile, those jurors who might have declined to find him guilty under Section 19.02(b)(1)—perhaps because they had doubts that Appellant had *intended* to cause that result, given the state of the evidence—may have opted to find Appellant guilty under Section 19.02(b)(2) instead. But, because the application paragraph left out the Section 19.02(b)(2) causation element, those latter jurors could well have convicted Appellant without ever making a finding that Appellant caused the victim's death.[4]

Causation being an element that was common to both theories of murder, the jurors were required to unanimously find it regardless of which theory they relied upon. *See Ramos v. Louisiana*, 590 U.S. 83, 93 (2020) ("There can be no question . . . that the Sixth Amendment's unanimity requirement applies to state and federal criminal trials equally."). But because some of the jurors may well have convicted Appellant under the flawed application of Section 19.02(b)(2), and thus failed to pass on the causation element, there is every chance that this jury verdict lacked unanimity—at least with respect to that common

---

[4] The plurality seems to make essentially this same argument in the course of its analysis of the first *Almanza* factor, which addresses the entirety of the jury charge. *See* Plurality Opinion at 21−22 (observing that the jury might have rejected the State's first theory of murder in the application paragraph based upon a lack of intent, and, proceeding to the second theory, it might have convicted Appellant without passing on the issue of causation).

element. This constitutes more than just theoretical harm for *Almanza* purposes.

## II. WAIVER-ONLY, STRUCTURAL ERROR?

A jury charge that altogether fails to require the jury to find every constituent element of the offense beyond a reasonable doubt should be considered, I have elsewhere urged, to be both "waiver-only" and "structural," and thus not subject either to procedural default or to *Almanza*'s egregious harm standard as a predicate to reversal. *Niles v. State*, 555 S.W.3d 562, 577−78 (Tex. Crim. App. 2018) (Yeary, J., dissenting); *Do v. State*, 634 S.W.3d 883, 908 (Tex. Crim. App. 2021) (Yeary, J., dissenting). As far as I am concerned, a defendant should be found to have suffered reversible error anytime he is convicted based upon a jury charge that authorizes the jury to convict him without first finding every constituent element of the charged offense.

As I indicated in my dissent in *Niles*, on this issue I agree with the late Justice Scalia:

> The underlying theme of the [Supreme] Court's opinion [in *Neder*] is that taking the element of materiality from the jury did not render Neder's trial unfair, because the judge certainly reached the 'right' result. But the same could be said of a directed verdict against the defendant—which would be *per se* reversible *no matter how overwhelming the unfavorable evidence.* * * * The very premise of structural-error review is that even convictions reflecting the "right" result are reversed for the sake of protecting a basic right. * * * Harmless-error review applies only when the jury *actually renders* a verdict—that is, when it has found the defendant guilty of all the elements of a crime.

*Niles*, 555 S.W.3d at 577 n.13 (Tex. Crim. App. 2018) (Yeary, J., dissenting) (quoting *Neder v. United States*, 527 U.S. 1, at 34, 38 (1999)

(Scalia, J., dissenting)). Like Justice Scalia, I do not believe we can deprive a defendant of his right to a jury assessment of every element of the offense simply because we believe we can safely assume what the jury *would* have done had it been correctly instructed.

Moreover, in my view, the fact that the Supreme Court would not regard this type of error to be "structural" should not prevent this Court from concluding, as a matter of construing our state constitution, that it is not subject to a harm analysis. As I observed in *Niles*:

> Unlike the Sixth Amendment, Article I, Section 15, of the Texas Constitution proclaims that "[t]he right of trial by jury shall remain inviolate." [TEX. CONST. art. I, § 15.] There is ample room for argument that the failure of the jury to render a verdict that passed on every element necessary to constitute the offense that is reflected in the judgment is "structural" error for state constitutional purposes, and not subject to a harm analysis at all.

*Id.* at 577. *See also Lake v. State*, 532 S.W.3d 408, 419 (Tex. Crim. App. 2017) (Yeary, J., concurring) ("I am not inclined to straightjacket our construction of [the harmless error rule] as the plurality continues to do today, in derogation of this Court's authority to, for example, declare certain *state* constitutional violations to be immune to harm analysis[.]"). In my view, "[t]he deprivation of" the right to a jury assessment of every element of an offense, "with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as 'structural error.'" *Sullivan v. Louisiana*, 508 U.S. 275, 281−82 (1993). When a jury charge altogether fails to require a jury to find one of the elements of the offense before convicting, I would simply reverse the conviction and order a new trial.

But the jury charge in this case did not *altogether* fail to require the jury to find causation as a predicate to conviction. If the jurors uniformly proceeded on the first theory of murder as presented in the application paragraph, then Appellant has suffered no deprivation of his right to a jury trial. That the jury verdict must be general, however, means we cannot know for sure this was the case, and the chance remains that the jury—or at least some of the jurors—voted to convict Appellant without first deciding whether he actually caused the victim's death. Under those circumstances, I am less sure than in *Niles* and *Do* that the error is either "waiver-only" or "structural," such that an *Almanza* analysis for egregious harm ought not to apply. *See Bell v. State*, 635 S.W.3d 641, 648 (Tex. Crim. App. 2021) (Slaughter, J., concurring, in which Yeary, J., joined) (concluding that an *Almanza* analysis applied because "[n]othing is 'missing' from the charge entirely, as was the case in *Niles*."). But I need not ultimately resolve that question because, in any event, I agree with the plurality's conclusion that Appellant has demonstrated egregious harm under *Almanza*.

### III. EGREGIOUS HARM?

I have already argued that the harm in this case was more than theoretical. Judge Parker's dissent makes a number of arguments why in its view the jury charge defect was nevertheless not harmful by *any* legal metric, much less by *Almanza*'s egregious harm standard. *See* Dissenting Opinion at 43−45 (summarizing arguments).[5] First, the dissent argues that the jury charge, taken as a whole, would have

---

[5] Although both Judge Parker and Judge Finley have dissents in this case, all references to "the dissent" or "Dissenting Opinion" hereafter in this opinion refer to Judge Parker's.

adequately directed the jury to a conclusion that it had to find that Appellant caused the victim's death—even absent such an express requirement in the Section 19.02(b)(2) portion of the application paragraph. *Id*. at 5−15. Second, the dissent maintains that, notwithstanding the defect in the application paragraph with respect to the Section 19.02(b)(2) theory of murder, it is possible to say from what the application paragraph *did* require the jury to find, under the particular facts of *this* case, that Appellant's jury essentially *did* make the requisite finding of causation, rendering the defect utterly harmless. *Id*. at 20−30. For the following reasons, I am unpersuaded.

## A. The Jury Charge as a Whole

The dissent identifies various aspects of the jury charge as a whole that it believes would have steered the jurors in the direction of finding causation under the Section 19.02(b)(2) theory of murder despite the lack of such an express requirement in the application paragraph. In my view, however, there are many aspects of the jury charge as a whole—including some the dissent relies upon—that seem likely to have caused the jury to focus on the application paragraph, which did *not* include a causation finding before authorizing the jury to convict Appellant of murder. I will address the dissent's arguments seriatim.

> **First: The abstract instruction's definition of murder was "prominent and easy to read, and it clearly required proof of causation[,]" while the "difficult" application paragraph gave the jury "a strong incentive to focus on and defer to the abstract murder paragraph."** Dissenting Opinion at 5−9.

I disagree. The abstract definition of murder was no more "prominent" in the jury charge than the application paragraph; in fact,

it was arguably less so. The abstract definition appears on a page of the jury charge that also includes five other definitional paragraphs. The application paragraph, by contrast, appeared on a separate page all by itself. That discrete placement was appropriate because "that paragraph specifies the factual circumstances under which the jury should convict or acquit," and as such, "it is the 'heart and soul' of the jury charge." *Vasquez v. State*, 389 S.W.3d 361, 367 (Tex. Crim. App. 2012).[6]

While it is not as grammatically simple—and therefore may not have been as "clear"—as the abstract definition, the application paragraph here is not impossibly obscure; grammatically speaking, it is perfectly navigable.[7] It makes no express reference back to the abstract

---

[6] The Court has said that an abstract jury instruction that fails to tailor culpable-mental-state definitions to the particular charged offense constitutes error. *E.g.*, *Cook v. State*, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994) ("It is error for a trial judge to not limit the definitions of the culpable mental states as they relate to the conduct elements in the particular offense."); *Alvarado v. State*, 704 S.W.2d 36 (Tex. Crim. App. 1985) (trial court erred in failing to limit culpable mental state definitions to those which relate to result-of-conduct offense on trial). Still, the Court has also said that the harm stemming from jury charge error caused by an overly-broad abstract legal culpable-mental-state definition can be ameliorated by an application paragraph that explicitly limits the jury's consideration to the applicable aspects of the broader law. *E.g.*, *Campbell v. State*, 664 S.W.3d 240, 247 (Tex. Crim. App. 2022) (observing that "the application portion of the charge limited the harmful effect of the erroneous culpable mental state definitions in the abstract portion"). The logic is understandable, given that the application paragraph is the operative portion of the jury charge, describing for the jury how to apply the law to the specific facts of the case. I am doubtful, however, that the *reverse* proposition is true: that a legally erroneous application paragraph can be saved by an abstract definition that sets out the appropriate scope of the applicable law.

[7] The dissent goes so far as to conclude that the application "paragraph/sentence" is so grammatically complex that the jury might even have concluded "that the causation element appearing in the first 'if' clause applies to the entire sentence." Dissenting Opinion at 8–9. Given the "; or" that

definition, such as to incorporate by reference the causation element from that definition into the post-semicolon application paragraph itself. *See id.* (observing that "if the application paragraph necessarily and unambiguously refers to another paragraph of the jury charge, then a conviction is authorized").[8] And it manifestly failed, on its own terms, to require the jury expressly to find that Appellant's conduct in fact caused the victim's death as a prerequisite to conviction.

> **Second: The jurors did not need a formal application paragraph to know that a causation requirement was required with respect to the Section 19.02(b)(2) theory of murder.** Dissenting Opinion at 9−10.

Next, the dissent proceeds to construct a sort of alternative application paragraph that it believes the jury might have used. Dissenting Opinion at 9−10. This would involve combining the abstract definition of Section 19.02(b)(2) murder with the general instruction that a failure of proof on the State's part with respect to *any* element requires the jury to acquit. *Id.* Of course, if it were reasonable to assume

---

separates the two application-paragraph clauses, however, I do not understand how such a misreading would be possible. Whatever else might be said about the relative clarity of the application "paragraph/sentence," it *clearly* sets out two independent theories of murder for the jury to choose between, and only the first of the two expressly requires the jury to find that Appellant caused the victim's death.

[8] The dissent asserts that it would be "natural" for the jury "to assume that an element that clearly appears in the easy-to-read passage [i.e., the abstract definition] must be somewhere in the more-difficult-to-read counterpart passage [i.e., the application paragraph]." Dissenting Opinion at 8. Well, so much for the requirement that the application paragraph at least refer back to the abstract definition before it may be understood to incorporate the law as set out there—however "clearly"! If it were truly so "natural" for the jury "to assume" such an incorporation of earlier provisions in the jury charge, the requirement of an express reference back would seem superfluous.

a jury could formulate its own application paragraph in this way, there would simply be no need for the trial court to give a formal application paragraph specifically instructing the jury *how* to apply "the pertinent penal law, abstract definitions, and general legal principles to the particular facts and the indictment allegations." *Vasquez*, 389 S.W.3d at 366.[9] The dissent once again essentially rejects the efficacy and critical importance of the application paragraph altogether in assessing harm. *See* note 8, *ante*.

> **Third: The jury was told not to favor any particular instruction over any other, and that would have caused the jury to "harmonize" the abstract definition with the application paragraph by reading the latter to require a finding of causation.** Dissenting Opinion at 10−11.

The jury charge also instructed the jury, as the dissent next points out, that "[y]ou have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any

---

[9] For better or worse, the convention that jury charges contain not only abstract "law applicable to the case," but also application-of-law-to-fact paragraphs, seems to have derived from statutory language that has remained extant in successive codes of criminal procedure in Texas since the 1856 "Old Code" (O.C. art. 594). It may presently be found in Article 36.14: The trial court "shall . . . deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case[.]" TEX. CODE CRIM. PROC. art. 36.14. It has long been said in view of this statutory language—whether justifiably or not—that jury charges that omit *application paragraphs* are erroneous. *See* TEXAS CRIMINAL PATTERN JURY CHARGES: GENERAL, EVIDENTIARY & ANCILLARY INSTRUCTIONS (2018 ed.) at 4−5 (citing *Gray v. State*, 152 S.W.3d 125, 127−28 (Tex. Crim. App. 2004)). Perhaps the cases have relied upon this statutory language to exaggerate the indispensability of application paragraphs. But once a trial court decides to *include* an application paragraph in the jury charge, it should at least *accurately* guide the jury's efforts in making the determination of guilt or innocence.

rule I may state to you." Dissenting Opinion at 11. The jury would have violated this instruction, the dissent avers, to have "disregarded the abstract paragraph or [given] special attention to the application paragraph." *Id*. But the whole problem here is that the abstract definition *conflicts* with the application paragraph; in order to give effect to either one, the jury would have to "disregard or give special attention" to the other. The net result is confusion, not clarity. And, because of the general verdict, we cannot know how the jurors likely resolved the conflict, if they even perceived it.

> **Fourth: Every other application paragraph required a finding of causation, so the jury must have realized that causation was likewise required to convict Appellant of murder under the Section 19.02(b)(2) portion of the murder application paragraph.** Dissenting Opinion at 11−12.

This next circumstance can also cut both ways. That every *other* application paragraph contained an explicit causation requirement could have been the very thing that convinced the jury that there was *no* comparable causation requirement to convict Appellant under the Section 19.02(b)(2) theory of murder. Obviously, the trial court knew how to include a causation requirement, because it did so with respect to every *other* application paragraph in the jury charge. The conspicuous absence of such a requirement in the second half of the murder application paragraph must—the jury might well have reasoned—have been deliberate.

> **Fifth: The State *told* the jury during voir dire that the State would have to prove causation with respect to Section 19.02(b)(2) murder.** Dissenting Opinion at 12−13.

It is true that the prosecutor made a couple of allusions during voir dire to the fact that the indictment's Section 19.02(b)(2) theory of murder would require evidence that the victim had, in fact, "died." Dissenting Opinion at 12. But a jury that was looking for a way to convict Appellant for murder despite harboring some doubt whether he intended to cause the victim's death, under the Section 19.02(b)(1) portion of the application paragraph, might have alit upon the Section 19.02(b)(2) portion of that paragraph and perceived it to be a way of avoiding the intent issue. As it happens, that portion of the application paragraph also relieved them of the obligation to resolve the causation issue. Eager to convict Appellant one way or another, some jurors might have jumped at the chance to convict Appellant under this theory having forgotten the prosecutor's voir dire tutorial.

In any event, the jury charge also informed the jury that "[w]hat the lawyers say is not binding upon you." While that paragraph of the jury charge pertained to issues of fact, not law, it remains the case that whatever the attorneys may have said about the law was trumped by the jury charge. And even if the prosecutor was right and the trial court was wrong, the jury was told that the trial court is the exclusive and all-knowing source of the law to be applied. For this reason, during their deliberations, the jurors might have disregarded the prosecutor's voir dire assertions about the law in favor of the Section 19.02(b)(2) portion of the murder application paragraph.

> **Sixth: "Causation is a widely understood element of murder"—apparently by *any* theory of murder.** Dissenting Opinion at 13−14.

> The trial court judge informed the jury right off the bat that "[i]t

is my duty at the end of the trial to explain to you the rules of law that you must follow and apply in arriving at your verdict." Shortly after, he reiterated: "You must not substitute or follow your own notion or opinion as to what the law is or ought to be. It is your duty to apply the law as I explain it to you, regardless of the consequences." Finally, at the conclusion of his jury instructions, the trial court admonished: "[Y]ou are bound to receive the law from the Court, which is herein given, and be governed thereby." None of these admonishments would have encouraged the jurors to believe that they could resort to the print, broadcast, or social media sources that the dissent invokes to inform it of the circumstances justifying conviction—quite the opposite.

That the dissent should resort to such sources as part of its harm analysis seems anomalous and anti-systemic to me. I do not think jurors necessarily expect their jury service to jibe with representations of the criminal justice system that they encounter in the media. Most jurors, for instance, are unaware—media sources notwithstanding—that defendants may be convicted of murder under the law of parties without personally committing the act that results in the victim's death. *See* TEX. PENAL CODE § 7.02(a)(2), (b) (authorizing conviction for, respectively, "soliciting, encouraging," etc., others to commit an offense, with the requisite intent, or engaging in a conspiracy in which it is foreseeable that a co-conspirator would commit a different offense). Some jurors might be shocked and dismayed to be so informed by a trial court's jury charge. Notwithstanding their shock, they would still be bound to follow the law as given, even if the popular media had not prepared them to anticipate such a consequence.

For all we know, that is what happened here. The jurors in this case (or some of them) might have considered the Section 19.02(b)(2) portion of the murder application paragraph to represent some kind of a transferred-intent or transferred-causation theory of murder—as unexpected and alien to the average juror, perhaps, as a Section 7.02 parties-liability instruction. So long as it could find that Appellant intentionally committed an act clearly dangerous to human life, the jury might have believed it was being told, it could convict him of "murder" regardless of the result. Counter-intuitive, perhaps, but that is why trial courts give binding jury instructions in the first place: because jurors cannot be expected to understand certain nuances of the law, regardless of—or perhaps even *because* of—their exposure to the popular media.

> **Seventh: Had the jury even noticed the absence of a causation requirement in the Section 19.02(b)(2) portion of the application paragraph, it would have realized that this was a "problem" and sought clarification from the trial court.** Dissenting Opinion at 14−15.

This argument presupposes that the jurors would have snapped to the inconsistency between the Section 19.02(b)(2) portion of the application paragraph and the abstract definition. At this juncture, we cannot know for sure that they did. And *if* they did, we cannot know for sure that they did not simply regard the application paragraph as the ultimate and authoritative statement of what they had to find to convict Appellant, and that they saw no need for trial court clarification.[10]

---

[10] In a similar vein, the dissent argues that if it had not in fact found causation at the guilt phase of trial, the jury would surely have raised a ruckus at the punishment phase when the instruction on sudden passion was given, since that instruction presupposes a finding of causation. Dissenting Opinion

In summary, the dissent fails to persuade me that the court of appeals erred to conclude that this defect in the application paragraph "deprived [Appellant] of his right to due process and affected his main defensive theory by . . . relieving the State of its high burden" to prove Appellant caused the victim's death—at all, much less to convince the jury to find that elemental fact unanimously and beyond a reasonable doubt. *Alkayyali*, 668 S.W.3d at 455.

## B. The Jury Essentially *Did* Find Causation

For roughly the latter half of its opinion, the dissent argues that even if the jury (or some jurors) proceeded under the Section 19.02(b)(2) portion of the murder application paragraph, it (or they) essentially *did* make the requisite causation finding. Dissenting Opinion at 20−30. Given the elements the jury *was* required to resolve, and the facts of this case, the dissent maintains, the jury effectively would have found causation, if only by necessary implication. *Id*. The argument is lengthy, complex, and (to me, at least) convoluted. Indeed, the jury (or jurors) could not possibly have been *aware* that it (or they) were making such a finding, assuming the dissent is correct that it (or they) in fact actually *did* make it. Again, I am unpersuaded.

If I understand the dissent's argument correctly, it ultimately concludes that the jury necessarily found causation based on the

---

at 33−36. But by that time the jury's attention was focused on the sudden passion issue, which had nothing to do with causation and everything to do with Appellant's state of mind at the time of the offense. There is no particular reason to expect the jury to have sent out a note at that juncture with respect to the guilt-phase issue of causation.

premise (among others) that "[n]o one disputes that the victim died."[11] Dissenting Opinion at 25. The problem is that the jury was authorized to convict Appellant under the Section 19.02(b)(2) portion of the application paragraph without ever having to pass on this fact, undisputed though it may have been. If the jury (or some jurors) did not have to decide whether the victim in fact *died*, it (or they) would not have decided—even if it (or they) *could* have, according to the dissent's elaborate logic—that Appellant's conduct *caused* that death.

Without an explicit instruction that it must find that Appellant's conduct in fact "cause[d] the *death*" of the victim as a predicate to conviction, TEX. PENAL CODE § 19.02(b)(2), I do not think it is possible to infer (much less, *necessarily* infer) that the jury (or some jurors) passed on the issue of death as the necessary result, or Appellant's causation of that result. And if it (or they) voted to convict Appellant without making those findings (as was eminently possible given the record in this case), then Appellant's due process rights were violated and he suffered

---

[11] Another of the dissent's premises seems to be that "impeding" normal breath or blood circulation—the "act clearly dangerous to human life" alleged in the indictment and included in the Section 19.02(b)(2) portion of the murder application paragraph—constitutes the "injury" for purpose of assessing the "serious bodily injury" that Appellant intended. Dissenting Opinion at 25−26. For that proposition, the dissent cites *Ortiz v. State*, 623 S.W.3d 804, 807 (Tex. Crim. App. 2021). *Id*. at 25 n.43. I would only note in this context that I have rejected the notion that impediment of *breath*, without more, constitutes "bodily injury" *per se. Marshall v. State*, 479 S.W.3 840, 846−49 (Tex. Crim. App. 2016) (Yeary, J., concurring and dissenting); *Ortiz*, 623 S.W.3d at 812−13 n.2 (Yeary, J., concurring and dissenting); *see also Price v. State*, 457 S.W.3d 437, 444 (Tex. Crim. App. 2015) (Yeary, J., concurring) ("To me, impeding the breath or circulation sounds a lot more like the description of a *type* of conduct than the description of a particular *result* of conduct.").

egregious harm under *Almanza*.[12]

## IV. CONCLUSION

For these reasons, I concur in the plurality's judgment affirming the judgment of the court of appeals.

**FILED:**                                                 May 7, 2025
**PUBLISH**

---

[12] Less than a year after he authored the Court's opinion on rehearing in *Almanza*, Judge Sam Houston Clinton had this to say, albeit in dissent, about the proper implementation of its "egregious harm" standard:

> Let it be clearly understood that an egregious error must first be found before an appellate court takes the next step . . . to review any other pertinent part of the record for actual harm. But obviously there are some errors so egregious that such a review will not save them. Nowhere in *Almanza* did we say, "This Court no longer recognizes per se reversible jury charge error," as intimated in the majority opinion.

*Lawrence v. State*, 700 S.W.2d 208, 218 (Tex. Crim. App. 1985) (Clinton, J., dissenting). *Lawrence* was a case, like this one, in which the jury charge had authorized the jury to convict the appellant of murder without first finding every element of that offense. Judge Clinton believed such an error in the jury charge would suffice in and of itself to establish egregious harm no matter what else a further examination of the record might reveal. I agree with him. As far as I am concerned, a defendant suffers egregious harm under *Almanza* anytime he is convicted based upon a jury charge that authorizes the jury to convict without finding all of the constituent elements of the charged offense.